```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
```
|  |  |  |
|---|---|---|
| USDC SDNY | | |
| DOCUMENT | | |
| ELECTRONICALLY FILED | | |
| DOC #: _____ | | |
| DATE FILED: 8/15/2016 | | |

LENEE LEE, et al.,                                  :

                Plaintiffs,        :        **REPORT AND RECOMMENDATION TO THE HONORABLE GEORGE B. DANIELS**[*]

- against -                                           :

HUDSON RIVER CAFÉ, CORP., et al.,       :        12cv463-GBD-FM

                Defendants.        :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

        On January 19, 2012, plaintiffs Lenee Lee ("Lee"), Santiago Garcia ("Garcia"), Samantha Garden ("Garden"), and Yasmilki Rosario ("Rosario") (collectively, the "Plaintiffs") commenced this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, et seq., against defendants Hudson River Café, Corp., 12th Avenue Restaurant Group, Inc., and Hamlet Peralta ("Peralta") (collectively, the "Defendants"). (ECF No. 1 ("Complaint" or "Compl.")). On October 21, 2014, Your Honor granted the Plaintiffs' motion for a default judgment and referred the case to me to conduct an inquest. (ECF Nos. 31, 32). For the reasons set forth below, I now recommend that the Plaintiffs be awarded judgment against the Defendants in the amount of $180,021.38,

---

    [*]    Jordan Reisch, a student at Harvard Law School, provided substantial assistance in the preparation of this Report and Recommendation.

plus prejudgment interest on Garcia's NYLL "spread of hours" claim at the rate of nine percent per annum.[1]

I.  Procedural History

        The Plaintiffs filed this action on January 19, 2012, and effected service on January 24, 2012. (Compl; ECF Nos. 16-18). On April 5, 2012, the Defendants filed their answer. (ECF No. 9). On September 17, 2012, Your Honor granted defense counsel's motion to withdraw and afforded the Defendants sixty days to obtain new counsel. (ECF Nos. 13, 14). Thereafter, on December 18, 2012, with no new counsel having filed a notice of appearance, Your Honor issued an order directing Peralta to show cause why the Court should not enter a default judgment against all the Defendants. (ECF No. 15). Pursuant to that order, the Defendants were to communicate with the Court by January 18, 2013, (id.), but they failed to comply with that directive. The Plaintiffs then filed their motion for a default judgment on October 17, 2014. (ECF Nos. 28-30). On October 21, 2014, Your Honor granted their motion and referred the case to me to conduct an inquest. (ECF Nos. 31, 32).

        On December 11, 2014, I directed that the Plaintiffs serve and file their inquest papers by February 13, 2015, and that the Defendants serve and file any

---

[1] Plaintiffs Lee, Rosario, and Garcia have submitted declarations corroborating the allegations in the Complaint that pertain to them. (See ECF No. 36 (Decl. of Grace Cretcher, Esq., dated Feb. 13, 2015 ("Cretcher Decl.")), Exs. F-H). The Plaintiffs' inquest memorandum notes, however, that plaintiff Garden is no longer in contact with her counsel. Accordingly, no documentation has been provided to substantiate her claim. (ECF No. 35 (Pls.' Inquest Mem. ("Pls.' Mem.")) at 1 n.1). I therefore have not calculated damages on her behalf.

opposition papers by February 27, 2015.  (ECF No. 33).  My order cautioned that, "[i]f no request for a hearing is made by any party, I shall make my report and recommendation on the basis of the papers submitted to me without any oral argument."  (Id. ¶ 4).  Although the Plaintiffs timely filed their inquest papers, (ECF Nos. 34-36), the Defendants have not responded or had any other communication with the Court.

II.     Standard of Review

In light of the Defendants' default, the Court must accept as true the Plaintiffs' well-pleaded allegations concerning issues other than damages.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).  Accordingly, the only question before the Court is the quantum of damages that the Plaintiffs are entitled to recover.

Although a plaintiff seeking to recover damages against a defaulting defendant must actually prove his or her damages by submitting admissible evidence, the Court need not hold a hearing so long as (A) the Court has determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (B) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Here, both requirements have been satisfied.  Moreover, neither side has requested a hearing.  I therefore have based this Report and Recommendation solely on the Plaintiffs' written submissions.

III.    Relevant Facts

The Plaintiffs' Complaint and inquest papers establish the following:

The Defendants owned and operated a restaurant in Manhattan known as Hudson River Café. (Compl. ¶ 13). The Plaintiffs all held non-managerial positions at that restaurant between July 2009 and October 2011. (Id. ¶¶ 19-22). The Defendants controlled and supervised the manner and method in which the Plaintiffs worked. (Id. ¶ 15).

Lee worked as a cocktail waitress at Hudson River Café from November 2010 to September 2011. (Cretcher Decl., Ex. F (Decl. of Lenee Lee, dated Sept. 29, 2014 ("Lee Decl.")), ¶ 1). Throughout her employment, Lee worked every other Tuesday for nine hours, every Friday for eight hours, every Saturday for eight hours, and every other Sunday for eight hours, for a total of approximately 49 hours every two weeks (33 hours during one week and 16 hours during the other week). (Id. ¶ 2). While she was employed at Hudson River Café, Lee was paid a total of $134.30 in wages by check. (Id. ¶¶ 5-6; see also id. at 3-4 ("Lee Spreadsheet")). Lee also received tips, but usually had to share them with other employees. (Lee Decl. ¶ 3). Furthermore, although her paychecks included an amount for "reported cash tips," Lee disputes that these amounts corresponded to the tips she actually received – in part, because the Defendants kept no records of her tips. (Id. ¶¶ 3, 8).

Rosario worked as a cocktail waitress at Hudson River Café from November 2010 to June 2011. (Cretcher Decl., Ex. G (Decl. of Yasmilki Rosario, dated

Sept. 30, 2014 ("Rosario Decl.")), ¶ 1). Throughout her employment, Rosario worked seven-hour shifts three days per week, plus additional shifts and special events that varied by week, for an average of 26 hours per week. (Id. ¶ 2). During her employment, Rosario was not paid any part of her wages by check, but at the end of her employment she received a "pile" of paychecks that had been created for her wages owed, totaling $1,099.40. (Id. ¶¶ 5-6; see also id. at 3 ("Rosario Spreadsheet")). Rosario also received tips, but usually had to share them with other employees. (Rosario Decl. ¶ 3). Furthermore, although her paychecks each included an amount for "reported cash tips," Rosario disputes that these amounts corresponded to the tips she actually received, and she notes that the Defendants kept no records of her tips. (Id. ¶¶ 3,8).

Garcia worked as a waiter and bartender at Hudson River Café from approximately July 2009 to October 2011. (Cretcher Decl., Ex. H (Decl. of Santiago Garcia, dated Sept. 26, 2014 ("Garcia Decl.")), ¶ 1). Throughout his employment, Garcia worked twelve-hour shifts four days per week and eight-hour shifts two days per week, for a total of 64 hours per week. (Id. ¶ 2). Garcia did not receive any extra pay for the days he worked in excess of ten hours. (Compl. ¶ 20). During his employment, Garcia received a total of $6,049 in wages. (Garcia Decl. at 4-6 ("Garcia Spreadsheet")). This sum was paid by check between approximately October 2010 and July 2011; Garcia did not receive any wages by check for his hours worked outside of this time frame. (Garcia Decl. ¶¶ 5-6, 9). Furthermore, the hours listed on his paychecks were significantly lower than the hours Garcia actually worked each week. (Id. ¶ 7). Garcia also received tips but

usually had to share them with other employees.  (Id. ¶ 9).  Furthermore, although his paychecks each reflected an amount for "reported cash tips," Garcia disputes that these amounts corresponded to the tips he actually received, noting that the Defendants kept no records of tips.  (Id. ¶¶ 3, 8).

       The Defendants failed to pay the Plaintiffs the minimum wage required by the FLSA and the NYLL.  (Compl. ¶¶ 16, 27, 32).  Moreover, even though Garcia worked substantially more than forty hours per week throughout his employment, (see Garcia Decl. ¶ 2), the Defendants never paid him the overtime wages required by the FLSA and the NYLL.  The Defendants also failed to pay Garcia the "spread of hours" premium that the NYLL requires for employees who work more than ten hours per day.  (Compl. ¶¶ 18, 20, 33).  The Defendants engaged in these violations of the FLSA and the NYLL willfully.  (Id. ¶¶ 27, 32-33).

IV.    Discussion

       As a result of the Defendants' default, the Plaintiffs claim to be entitled to actual damages, liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs.

       A.    Actual Damages Under the FLSA and the NYLL

       The Plaintiffs contend that the Defendants are liable for damages under the FLSA and the NYLL because they willfully failed to pay each of the Plaintiffs the required minimum wage.  (Compl. ¶¶ 16, 27, 32).  In addition, the Plaintiffs allege that the Defendant failed to pay Garcia the overtime and "spread of hours" wages required by

law.  (See id. ¶¶ 18, 20, 33; Pls.' Mem. at 2-3).  The Plaintiffs seek to recover these sums for the entire period during which they were employed.

        1.        Unpaid Minimum Wages

Both the FLSA and the NYLL require employers to pay their employees at least the minimum wage rate for every hour worked.  29 U.S.C. § 206; N.Y. Lab. Law § 652.  "Where an employer fails to maintain adequate records of his employees' compensable time as required by the FLSA, a plaintiff employee must produce only 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  Cuzco v. Orion Builders, Inc., 262 F.R.D. 325, 331 (S.D.N.Y. 2009) (quoting Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 67 (2d. Cir. 1997)).  In a default situation, when the defendants have failed to rebut the plaintiffs' allegations, "[the] plaintiffs' recollection and estimates of hours worked are presumed to be correct."  Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

The New York state minimum wage was $7.15 per hour in July 2009, when Garcia began to work at the Hudson River Café.  From July 24, 2009, through the dates the Plaintiffs last were employed by the Defendants, both the federal minimum wage and the New York state minimum wage were $7.25 per hour.  See 29 U.S.C. § 206; 12 N.Y.

Comp. Codes R. & Regs. § 142-2.1.[2]  Despite those statutory requirements, at no time during any one week did the Plaintiffs receive wages equaling the minimum wage for the hours that they worked that week.  (See Lee Spreadsheet; Rosario Spreadsheet; Garcia Spreadsheet).[3]

Lee alleges that from the week of October 4, 2010, to the week of November 21, 2011, she worked a total of 1,470 hours and was paid just $134.30 by the Defendants.  (See Lee Spreadsheet).  Rosario alleges that from the week of November 1, 2010, to the week of July 18, 2011, she worked a total of 884 hours and was paid just $1,099.40.  (See Rosario Spreadsheet).  Garcia alleges that from the week of June 29, 2009, to the week of October 24, 2011, he worked a total of 7,800 hours (4,880 of which

---

[2]     New York's minimum wage requirements over time are posted at New York State Department of Labor, Labor Statistics, History of the Hourly Minimum Wage, http://www.labor.ny.gov/stats/minimum_wage.asp (last visited August 10, 2016).

    The statute of limitations under the NYLL is six years.  N.Y. Lab. Law §§ 198(3), 663(3).  Under the FLSA, the statute of limitations is two years, but may be extended to three years if the claim arises from a "willful" violation.  29 U.S.C. § 255(a).  Given the Defendants' default, the Court must assume the Plaintiffs' claims arose from willful violations, and the FLSA three-year statute of limitations therefore applies.  See Easterly v. Tri-State Transport Corp., No. 11 Civ. 6365 (BV), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015).  Nevertheless, because each of the Plaintiffs began working for the Defendants less than three years before the Complaint was filed, all of their claims fall within both statutes of limitation.

[3]     It is likely that the Defendants paid the Plaintiffs below the minimum wage because they had applied some portion of the Plaintiffs' tips against the amounts that they owed the Plaintiffs under the minimum wage laws.  If that was their intent, however, the Defendants were obligated to notify the Plaintiffs of the statutory requirements related to the tip credit. Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011).  Having defaulted, the Defendants have presented no evidence that they satisfied the notice requirements of the FLSA and the NYLL.  Moreover, the Plaintiffs each have indicated that they never received the required notice.  (See Lee Decl. ¶ 4; Rosario Decl. ¶ 4; Garcia Decl. ¶ 4).  The Defendants consequently are liable for the full minimum wage without any offset.

were regular, non-overtime hours) and was paid just $6,049.00. (See Garcia Spreadsheet). Since these allegations are uncontested, the Plaintiffs each are entitled to recover the difference between what they actually were paid and what they should have been paid pursuant to the minimum wage prevailing at the time. The Defendants consequently owe the Plaintiffs the following amounts of unpaid minimum wages: Lee, $10,523.20 (1,470 hours x $7.25 per hour = $10,657.50 - $134.30); Rosario, $5,309.60 (884 hours x $7.25 per hour = $6,409 - $1,099.40);[4] Garcia, $29,315.00 (160 regular hours x $7.15 per hour + 4,720 regular hours x $7.25 per hour = $35,364.00 - $6,049.00).[5]

### 2. Unpaid Overtime Wages

The FLSA and the NYLL both further require employers to compensate their employees at one and one-half times their regular hourly rate for every hour worked over forty hours per week. See 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 ("An employer shall pay an employee for overtime . . . in the manner and methods provided in and subject to the exemptions of [the FLSA]."). In the absence of an

---

[4] The Plaintiffs erroneously calculated the total amount of Rosario's unpaid minimum wages to be $3,612.96. (See Cretcher Decl. ¶ 17). This appears to have resulted from a failure to include any wages for hours Rosario worked during the first nine weeks of her employment. (See Rosario Spreadsheet).

[5] The Plaintiffs erroneously calculated the total amount of Garcia's unpaid minimum wages to be $31,581.20. (See Cretcher Decl. ¶ 18). The Plaintiffs apparently applied the amounts that Garcia was paid to calculate an hourly rate based upon a 64-hour work week, rather than a 40-hour work week, as evidenced by a corresponding decrease in the amount that the Plaintiffs claim for Garcia's overtime wages. (See Garcia Spreadsheet; see also infra n.6). Because Garcia did not receive an amount equal to the applicable minimum wage for any week that he worked, I have, instead, calculated Garcia's minimum wages owed using the 40-hour per week schedule that Garcia's salary was presumptively intended to cover. See Giles v. City of N.Y., 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).

express agreement otherwise, courts will assume that an employee's weekly salary is intended to cover only forty hours per week. See Giles, 41 F. Supp. 2d at 317.

Here, although neither Lee nor Rosario allege that they worked overtime, Garcia alleges that he worked substantially more than forty hours per week, but was not paid for any of these hours. Since this allegation is uncontested, Garcia is entitled to recover his unpaid overtime at a rate equal to one and one-half times the minimum wage. The Defendants consequently owe Garcia: (a) $171.60 for the week of June 29, 2009 (16 overtime hours x $7.15 x 1.5); (b) $772.20 for the three weeks between the week of July 6 and the week of July 20, 2009 (24 overtime hours x $7.15 x 1.5 x 3 weeks); and (c) $30,789.00 for the 118 weeks he worked after the minimum wage was increased (24 overtime hours x $7.25 x 1.5 x 118 weeks). This results in a total of $31,741.80 for the 122 weeks that Garcia worked at Hudson River Café.[6]

### 3. Spread of Hours

Under the NYLL, an employer must pay an employee who works more than ten hours in one day an additional hour of pay at the minimum wage rate, often called a "spread of hours" premium. 12 N.Y. Comp. Code R. & Regs. § 142-2.4. Garcia alleges that he worked four ten-plus hour shifts per week for the duration of his 122-week employment. (Garcia Decl. ¶ 2). He therefore is entitled to a total of $3,536.40 in

---

[6] The Plaintiffs erroneously calculated the total amount of Garcia's unpaid overtime to be $29,486.72. (See supra n.5).

"spread of hours" pay (4 shifts x 4 weeks x $7.15 + 4 shifts x 118 weeks x $7.25).  (See Garcia Spreadsheet).

  B. <u>Liquidated Damages</u>

    Both the FLSA and the NYLL allow plaintiffs to recover liquidated damages.  Under the FLSA, liquidated damages in an amount equal to compensatory damages are mandatory unless the employer demonstrates that it acted in "good faith" and did not willfully violate the statute.  29 U.S.C. §§ 216(b), 260.  Similarly, under the NYLL, an employee is entitled to liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).

    For wages paid prior to April 9, 2011, the liquidated damages that an employees could recover under the NYLL were limited to twenty-five percent of actual damages.  Thereafter, however, the liquidated damages percentage was raised to match the FLSA percentage, <u>i.e.</u>, one hundred percent of actual damages, including unpaid wages, unpaid overtime, and spread of hours premiums.[7]  <u>See id.</u> §§ 198(1-a), 663(1); <u>Inclan v. N.Y. Hospitality Group, Inc.</u>, No. 12 Civ. 4498 (NRB), 2015 WL 1399599, at *11 (S.D.N.Y. Mar. 26, 2015).

---

  [7] Unlike the FLSA, the NYLL incorporates the "spread of hours" premium into the wage base upon which liquidated damages are calculated.  <u>Compare</u> 29 U.S.C. § 216(b) (offending employers "shall be liable . . . in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages"), <u>with</u> N.Y. Lab. Law § 663(1) (offending employers shall be liable for "liquidated damages equal to . . . the total of such underpayments found to be due").

By virtue of their default, the Defendants have admitted that they acted willfully and in bad faith, thus potentially entitling the Plaintiffs to liquidated damages under both the federal and state regulatory schemes. Prior to the April 2011 change in the law, many courts permitted plaintiffs to recover liquidated damages equal to 125 percent of their actual damaages, reasoning that the liquidated damages provisions of the FLSA and NYLL served different purposes. See Inclan, 2015 WL 1399599, at *11 (citing cases). As Judge Buchwald has explained, however, such double recoveries should no longer be permitted. See id. at *11-12. Accordingly, while there are cases reaching the contrary conclusion, see Collado v. DonneyCarney Rest., LLC, No. 14 Civ. 3899 (GBD) (HBP), at *7 (S.D.N.Y. Aug. 10, 2015) (collecting cases), I recommend that the liquidated damages to be awarded in this case be limited to one hundred percent of the Plaintiffs' actual damages.

In light of the foregoing, the Plaintiffs are entitled to liquidated damages in the following amounts: Lee, $10,523.20; Rosario, $5,309.60; and Garcia, $64,593.20.

C. Prejudgment Interest

The Plaintiffs also are entitled to prejudgment interest on their state law damages at the rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001, 5004. The FLSA, however, does not provide for prejudgment interest. Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715 (1945)). This is because "liquidated damages awarded under the FLSA for unpaid overtime [already are] designed to compensate employees for delay in payment, [and]

such damages [therefore] are the functional equivalent of prejudgment interest on the overtime pay." Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). Accordingly, when a plaintiff has received an award of federal liquidated damages, he is "entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed." Id.; see also, e.g., McLean v. Garage Mgmt. Corp., Nos. 09 Civ. 9325 (DLC), 10 Civ. 3950 (DLC), 2012 WL 1358739, at *11 (S.D.N.Y. Apr. 19, 2012) (plaintiffs "entitled to NYLL prejudgment interest . . . on unpaid overtime wages for the period during which they will not receive FLSA liquidated damages"). In this case, the Plaintiffs therefore can recover prejudgment interest only on those claims for which no federal liquidated damages have been awarded. The only such claim is Garcia's claim for "spread of hours" damages under the NYLL.

"When unpaid wages were incurred at various times, simple prejudgment interest is calculated from a singular, midpoint date through the date judgment is entered." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quotations, brackets, and ellipses omitted); see also Gonway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir. 1994) ("[W]here damages are incurred at various times after the cause of action accrues, [New York law] grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest."). Courts most commonly use the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012).

Here, the approximate midpoint date for Garcia's employment was September 1, 2010. Accordingly, he should be awarded prejudgment interest on the sum of $3,536.48 from that date forward at a rate of nine percent per annum.

D.  Attorneys' Fees and Costs

Finally, the Plaintiffs seek to recover for attorneys' fees and costs in the amount of $25,092.50. (Cretcher Decl. ¶ 36). "Both the FLSA and NYLL are fee-shifting statutes entitling [Plaintiffs] to recover . . . reasonable attorneys' fees and costs." Gurung v. Malhotra, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012); see 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).[8]

1.  Attorneys' Fees

To determine the amount of attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," often referred to as the "lodestar." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522

---

[8] Effective April 9, 2011, the NYLL provides that:

> In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorneys' fees and costs incurred in enforcing any court judgment. Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law § 663(4). Therefore, unless the Defendants either honor the Court's award of attorneys' fees and costs or file an appeal within ninety days, the portion of the judgment attributable to the Plaintiffs' NYLL claims will automatically increase by fifteen percent.

F.3d 182, 183 (2d Cir. 2008). That amount is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id. at 190; see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010). Courts calculate the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

        a.        Reasonable Hourly Rate

In assessing the reasonableness of an attorney's hourly rate, the Court must consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." I.B. v. N.Y.C. Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). In doing so, the Court may rely on its own knowledge of private firm hourly rates. Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987). The "relevant community" is "normally the forum district." Arbor Hill, 522 F.3d at 190.

"[T]he FLSA and New York Labor Law are both straightforward statutes." Castellanos v. Deli Casagrande Corp., No. 11 Civ. 245 (JFB) (AKT), 2013 WL 1207058, at *10 (E.D.N.Y. Mar. 7, 2013) (internal quotation marks omitted). Thus, attorneys in FLSA cases typically command relatively modest rates of between $250 and $450 per hour, depending on their level of experience. Gurung, 851 F. Supp. 2d at 597.

The Plaintiffs in this action have been represented by Bruce E. Menken, Jennifer L. Smith, Christine Clarke, and Grace Cretcher of Beranbaum Menken LLP, an employment law firm in Manhattan. Mr. Menken, a partner and principal of the firm, has been practicing law for over twenty-seven years. (Cretcher Decl. ¶¶ 23, 25). Since 1993, he has been affiliated with several law firms, representing clients in employment and civil rights cases. (Id.). He regularly attends workshops and seminars sponsored by the National Employment Lawyers Association and occasionally gives presentations regarding labor and employment law. (Id. ¶ 26). The Plaintiffs seek to recover for Mr. Menken's time at the rate of $500 per hour, which is alleged to be the rate he currently charges "people who can afford his full fee." (Id. ¶ 27).

At the time of her work on this case, Ms. Smith was a senior associate at the firm, and had been practicing law since 2002. The Plaintiffs seek to recover for Ms. Smith's time at the rate of $300 per hour. (Id. ¶ 29). Ms. Clarke, a former associate of the firm, is a 2010 graduate of Yale Law School. At the time of her work on this case, she had been admitted to the practice of law for under three years. The Plaintiffs seek to recover for her time at the rate of $250 per hour. (Id. ¶¶ 30-31). Ms. Cretcher is a 2012 graduate of Georgetown University Law Center, who spent a year as a law clerk in the Southern District of Ohio. She too, at the time of her work on this case, had been admitted to the practice of law for under three years. The Plaintiffs seek to recover for her time at a rate of $200 per hour. (Id. ¶¶ 32-33). I find that each of these rates is reasonable.

b. <u>Hours Reasonably Expended</u>

To enable a court to determine the reasonableness of the hours expended, a party seeking an award of attorneys' fees must submit contemporaneous time records indicating the number of hours expended and the nature of the work done. <u>See</u> <u>Lewis v. Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986); <u>Puglisi v. Underhill Park Taxpayer Ass'n</u>, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).

The contemporaneous time records submitted by Plaintiffs' counsel indicate that their work on this case consumed 98.96 hours of billable time, for a total of $25,092.50. (Cretcher Decl. ¶ 36 & Ex. I; Pls.' Mem. at 7-8). Having reviewed the time records, I find that the number of hours expended on certain aspects of this case was excessive. For example, counsel spent 56.65 hours drafting, preparing, and filing their motion for a default judgment and their largely duplicative inquest papers. These documents, however, appear to contain mostly boilerplate language that counsel has used in previous cases. Recognizing the repetitiveness of the tasks arising in these cases, several judges in this District have adjusted the hours claimed by other plaintiffs' counsel. <u>See, e.g.</u>, <u>Yuquilema v. Manhattan's Hero Corp.</u>, No. 13 Civ. 461 (WHP) (JLC), 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 26, 2014) (rejecting hours allegedly spent reviewing and finalizing largely boilerplate complaint); <u>Angamarca v. Pita Grill 7 Inc.</u>, No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *13 (S.D.N.Y. Aug. 2, 2012) (reducing 40.05 hours by fifteen percent because case led to default judgment, did not raise particularly complex legal issues, and submissions largely included boilerplate language); <u>Carrasco</u>

v. West Village Ritz Corp., No. 11 Civ. 7843 (DLC) (AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012) (not crediting counsel for 15.05 hours of work on default motion because "the motion papers appear to be largely 'boiler plate' used by plaintiffs' counsel in other cases"). Here, to account for the straightforward nature of the case and the use of boilerplate, it is appropriate to reduce Plaintiffs' counsel's billed time by twenty-five percent. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (an "across-the-board percentage cut[ ] in hours [is] a practical means of trimming fat from a fee application") (internal quotation marks omitted).

After making the time adjustments described above, the Plaintiffs should be awarded $18,819.38 as their reasonable attorneys' fees in this matter.

    2.    Costs

In addition to attorneys' fees, the Plaintiffs seek to recover costs in the amount of $780, which includes the $350 fee for filing this lawsuit and a $430 fee for "The Global Search." (Cretcher Decl., Ex. J). The latter amount is unexplained and should be disallowed. Accordingly, the Plaintiffs should be awarded costs in the amount of $350.

V.    Conclusion

In sum, I recommend that Lee be awarded a total of $21,056.40; Rosario, a total of $10,619.20; and Garcia, a total of $129,186.40, plus prejudgment interest on the sum of $3,536.40 at the rate of nine percent per annum from September 1, 2010. In

addition, the Plaintiffs should recover $18,819.38 in attorneys' fees and $350 in costs, for a grand total of $180,021.38, plus Garcia's prejudgment interest.

VI. Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. Failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

SO ORDERED.

Dated: New York, New York
August 15, 2016

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Plaintiffs' counsel (via ECF)

Hudson River Café (via U.S. Mail)
697 West 133rd Street
New York, New York 10023

Hamlet Peralta (via U.S. Mail)
Register No. 99636-020
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, New York 10007